

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**03/09/2012**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **JOHN CARLEW,** | § | **Case No.  11-37886** |
| | § | |
| **Debtor.** | § | **Chapter 7** |
| | § | |

## MEMORANDUM OPINION REGARDING THE CHAPTER 7 TRUSTEE'S
## OBJECTION TO DEBTOR'S CLAIM OF EXEMPTION
[Doc. Nos. 42, 45, 53, 66, & 73]

### I. INTRODUCTION

In two recent opinions, this Court has addressed whether a debtor may exempt proceeds from the settlement of a lawsuit over an insurance policy covering the debtor's homestead.  In *In re Okwonna-Felix*, this Court held that the debtor could exempt these proceeds under the federal "wild card" exemption provided by 11 U.S.C. § 522(d)(5).[1]  *In re Okwonna-Felix*, No. 10-31663-H4-13, 2011 WL 3421561 at *7 (Bankr. S.D. Tex. 2011).  In *In re Hill*, this Court held that the debtor could exempt the proceeds under Texas Property Code § 41.001.  *In re Hill*, No. 08-36267, 2011 WL 6936357 at *10 (Bankr. S.D. Tex. 2011).  In sum, this Court has held that because the lawsuits in these cases would not have been filed but for the insurer's failure to pay under the policy covering the debtor's homestead, the debtor could exempt the proceeds from the settlement of the lawsuit under both federal and state law.

Now, in the case at bar, the Court must confront two issues that were not present in either *Felix* or *Hill*.  First, where the relief requested by the debtor in his state court suit against the

---

[1] Any reference herein to a section is a reference to a section of the Bankruptcy Code.  Any reference to "Code" is a reference to the Bankruptcy Code.

insurer is based not only on breach of the insurance contract but also on violations of the Texas Deceptive Trade Practices Act, breach of common law duty of good faith and fair dealing, common law fraud, violations of the Texas Insurance Code, negligence, negligent misrepresentation, intentional infliction of emotional distress, and conspiracy to commit each of the foregoing claims, must the settlement proceeds be apportioned equally among all of the causes of action—thereby preventing the debtor from exempting all of the proceeds[2]—or may all of the proceeds be attributed to solely the breach of the homestead insurance policy action, thereby allowing the Debtor to exempt all of the proceeds as was done in *Hill*? Second, even if the Debtor is entitled to exempt these settlement proceeds, have they nevertheless lost their exempt status because the Debtor has held, and not used, the proceeds for longer than six months?[3] The Court writes this Memorandum Opinion to explain its rulings on these two issues.

The Court makes the following findings of fact and conclusions of law pursuant to Federal Bankruptcy Rule 9014 and 7052. To the extent that any finding of fact is construed as a conclusion of law, it is adopted as such; and to the extent any conclusion of law is construed as a finding of fact, it is also adopted as such. The Court reserves the right to make additional findings and conclusions as it deems appropriate or as any party may request.

## II. FINDINGS OF FACT

### A.    The History of the Bankruptcy Case

1.    On September 13, 2011, John Carlew (the Debtor) filed his voluntary Petition (the Petition) under Chapter 7 of the United States Bankruptcy Code. [Doc. No. 1].

---

[2] If the proceeds must be apportioned to the various causes of action, then the Debtor will not be able to exempt those proceeds so attributed, as the Texas Property Code provides no exemption for causes of action based upon fraud, negligence, etc.

[3] *See* TEX. PROP CODE ANN. §41.001(c) (West 2012). "The homestead claimant's proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale." *Id.*

2.  On September 13, 2011, William G. West, was appointed the Chapter 7 Trustee for the Debtor's estate (the Trustee). [Doc. No. 8].

3.  Contemporaneously with his filing of the Petition, the Debtor filed his complete schedules. Included in the assets listed on Schedules B and C is the Debtor's interest in "proceeds from damage claim under Property Insurance Policy on the Debtor's home. Currently held for home repair" (the Insurance Proceeds). The Debtor scheduled the Insurance Proceeds as having a value of $73,000.00. [Schedule C, Doc. No. 1]. These proceeds arose from a pre-petition settlement of a lawsuit that the Debtor had filed in state court (the State Court Lawsuit).[4] [Doc No. 44, Ex. A].

4.  In his Schedule C (Property Claimed as Exempt), the Debtor initially scheduled the full amount of Insurance Proceeds as exempt pursuant to Tex. Ins. Code §1108.051. The Debtor also exempted various Annuity and IRA investment accounts (the Accounts) under the Texas Insurance Code. Additionally, the Debtor listed his homestead as exempt property pursuant to the homestead laws of the state of Texas. [Schedule C, Doc. No. 1].

5.  On October 4, 2011, the Trustee held and concluded the § 341 meeting of creditors. [Doc. No. 42].

6.  On November 3, 2011, the Trustee filed the Trustee's Motion for Extension of Time to Object to Debtor's Exemptions (the Extension).[5] [Doc. No. 33].

---

[4] *See* [Finding of Fact Nos. 17 & 18].

[5] The deadline to object to a debtor's exemptions is thirty days from the conclusion of the meeting of creditors. Fed. Bankr. R. 4003. The Court may, for cause, extend the deadline provided that the party in interest requesting the extension files a motion requesting such an extension prior to the expiration of the initial 30-day deadline. *Id.*

7.   On November 4, 2011, this Court issued an order extending the deadline to January 6, 2012 for the Trustee to file any objection to the Debtor's claimed exemptions.  [Doc. No. 34].

8.   On January 3, 2012, the Trustee filed his Objection to Debtor's Claim of Exemptions (the Objection), asserting an objection to the exemption of Insurance Proceeds under Tex. Ins. Code §1108.051.  [Doc. No. 42].

9.   On January 5, 2012, the Debtor filed his  Debtor's Response in Opposition to Trustee's Objection to Exemption of Insurance Proceeds and Request for Hearing (the Debtor's Response to Objection), amending his Schedule C to further designate the exemption of the Insurance Proceeds as exempt pursuant to the homestead exemption under Texas Property Code §§ 41.001-.002.  [Doc. No. 44, Ex. B].

10.  On January 6, 2012, the Trustee filed his Amended Objection to Debtor's Exemptions (the Amended Objection), adding an objection to the exemption of the Debtor's Accounts.  [Doc. No. 45].

11.  On January 23, 2012, in the Debtor's Response in Opposition to the Trustee's Amended Objection to Exemptions (the Debtor's Response to Amended Objection), the Debtor asserts that he has provided all documents requested by the Trustee, including evidence that the Accounts were timely and legally funded.  [Doc. No. 53, ¶ 5]. The Debtor also reurges his exemption of the Insurance Proceeds pursuant to the homestead exemption under Texas Property Code §§ 41.001-.002.  [Doc. No. 53, ¶ 10].

12.  On February 6, 2012, the Trustee filed his Reply to Debtor's Response in Opposition to Trustee's Amended Objection to Exemptions (the Trustee's Reply). [Doc. No. 66].  The Trustee acknowledges receipt of information resolving his objections to the Accounts.

The Trustee, however, added two alternative objections to the Debtor's exemption of the Insurance Proceeds.  First, because the State Court Lawsuit involves numerous, unallocated state law claims, the Trustee objects to the Insurance Proceeds being completely exempt under Texas Property Code §§ 41.001-.002. [Doc. No 66, ¶ 9]. Alternatively, the Trustee contends that to the extent any portion of the Insurance Proceeds were at one time exempt, the Debtor waived his right to the exemption by failing to use the Insurance Proceeds within six months of receipt.  [Doc. No. 66, ¶ 12].

13. On February 7, 2012, the Debtor amended his Schedule C [Doc. No. 68].  This Amended Schedule C claims the Insurance Proceeds as exempt under the homestead laws of the state of Texas.

14. On February 8, 2012, the Debtor filed his Trial Brief in Opposition to Trustee's Amended Objection to Exemptions (the Debtor's Trial Brief).  [Doc. No. 73].

15. On February 9, 2012, this Court held a hearing on the Amended Objection, the Debtor's Response to Amended Objection, and the Trustee's Reply.  At this hearing, the Trustee announced that the Debtor and he had resolved the Trustee's objections regarding the Accounts listed in the Amended Objection to Exemptions.  However, there was no settlement on the Debtor's exemption of the Insurance Proceeds and this Court therefore held a hearing on this discrete issue.  At the close of the hearing, this Court took the matters under advisement. The Court stated that it would explain its rulings in a Memorandum Opinion.  This, the Court now does.

**B.    The Background of the Insurance Proceeds**

16. In September 2008, Hurricane Ike struck and damaged the homestead of the Debtor and his Non-Debtor Spouse.  [Doc. No. 53, ¶ 7]. After Hurricane Ike, the Debtor filed an

insurance claim under his homeowner's insurance policy with Texas Windstorm Insurance Agency (TWIA). TWIA thereafter refused to pay the claim.

17. Prior to filing for bankruptcy protection, the Debtor commenced litigation against TWIA and several individuals under Cause No. 09CV2199 in the 56th Judicial District Court of Galveston County, Texas (already defined as the State Court Lawsuit). Included in the Debtor's causes of action asserted in the State Court Lawsuit are claims for alleged breach of the insurance contract, violations of the Texas Deceptive Trade Practices Act, breach of common law duty of good faith and fair dealing, common law fraud, violation of the Texas Insurance Code, negligence, negligent misrepresentation, intentional infliction of emotional distress, and conspiracy to commit each of the foregoing claims. [Doc. No. 45, ¶ 5].

18. On or about July 11, 2011, the Debtor entered into a settlement agreement that provided that TWIA would pay to the Debtor the sum of $125,000. After deducting the attorney's fees from the amount of $125,000, the remaining proceeds of $73,353.98 would be paid to the Debtor (this $73,353.98 has already been defined as the Insurance Proceeds, with the amount being rounded off to $73,000). In exchange for the payment of $125,000, the Debtor released all claims he held, or may have held, against the defendants. On or about the same date, the Debtor received a check from his attorney in the State Court Lawsuit, net of fees and expenses, in the amount of $73,353.98. [Doc. No. 44, Ex. A]. This check represents the Insurance Proceeds that are subject to the Objection.6

19. The Debtor did not spend the Insurance Proceeds during the two-month period prior to his bankruptcy filing; instead, he continued to hold such funds separately. [Doc. No. 53,

---

6 As there is no lien on the Debtor's homestead, this dispute is solely between the Trustee and the Debtor. Unlike *Felix* and *Hill*, there is no home lender involved.

¶ 9]. Pursuant to the provisions of § 541, the Insurance Proceeds became property of the Debtor's estate on the petition date and have remained as such, pending the allowance of the claimed exemption. [Doc. No. 73, ¶ 11].

### III. CREDIBILITY OF WITNESSES

One witness testified during the February 9, 2012 hearing: the Debtor. He testified for approximately fifteen minutes at the hearing about the following: his homestead; Hurricane Ike's damage to his homestead that is supported by an adjuster; TWIA's refusal to pay; the State Court Lawsuit against TWIA and subsequent settlement agreement whereby he received the Insurance Proceeds; his intent to repair his homestead; and how the lack of repairs is affecting him. This Court finds the Debtor to be a credible witness and gives substantial weight to his testimony.

### IV. CONCLUSIONS OF LAW

**A.   Jurisdiction, Venue, and Constitutional Authority to Sign a Final Order**

1. Jurisdiction

The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This particular dispute is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), and (O).

2. Venue

Venue is proper pursuant to 28 U.S.C. § 1408.

3. Constitutional Authority to Sign a Final Order

Having concluded that this Court has jurisdiction over this contested matter, the Court nevertheless notes that *Stern v. Marshall*, 131 S. Ct. 2594 (2011), sets forth certain limitations on the constitutional authority of bankruptcy courts to enter final orders. This Court must therefore

determine whether it has constitutional authority to sign a final order in the dispute at bar—i.e. the order relating to the Objection to Exemptions. The Court concludes that it does for the following reasons.

### a. The First Reason:  The facts in *Stern* are distinguishable from the facts in the case at bar.

In the dispute at bar, the Chapter 7 Trustee has objected to the Debtor's exemption of the Insurance Proceeds pursuant to Section 522(l) and Fed. Bankr. R. 4003(b). State law has no equivalent to this statute and rule; therefore, the facts in this case are distinguishable from those in *Stern*, which involved solely state law. Granted, the resolution of the dispute at bar does hinge on Texas state law regarding homestead exemption. But, unlike *Stern*, where the resolution of the debtor's counterclaim did not necessarily adjudicate the creditor's claim, here, the resolution will certainly determine whether the Debtor has a claim to the Insurance Proceeds. If he does— i.e. if these proceeds are exempt—there will necessarily be less funds available for distribution for creditors. If the Debtor does not have a claim to the Insurance Proceeds—i.e. the proceeds are not exempt—then the Trustee will have more funds to distribute the proceeds to pay creditors. For these reasons, the dispute at bar is sufficiently distinguishable from the dispute in *Stern* for this Court to sign a final order.

### b. The Second Reason:  Even if Stern Applies, the "Public Rights" Exception Articulated in Stern Applies in the Case at Bar.

In the alternative, even if *Stern* somehow applies, this Court concludes that the one exception articulated in *Stern* by the Supreme Court applies—specifically, that this Court may enter a final order over essential bankruptcy matters under the "public rights" exception. Under *Thomas v. Union Carbide Agric. Prods. Co.*, a right closely integrated into a public regulatory scheme may be resolved by a non-Article III tribunal. 473 U.S. 568, 593 (1985). The

Bankruptcy Code is a public scheme for restructuring debtor-creditor relations, necessarily including "the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts." *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363–64 (2006); *see N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982) (plurality opinion) (noting in dicta that the restructuring of debtor-creditor relations "may well be a 'public right'"). *But see Stern*, 131 S. Ct. at 2614 n.7 ("We noted [in *Granfinanciera*] that we did not mean to 'suggest that the restructuring of debtor-creditor relations is in fact a public right.'").

The key issue before this Court involves a dispute over whether or not certain property (i.e. the Insurance Proceeds) is exempt. The right to exempt property from the bankruptcy estate is established by an express provision of the Bankruptcy Code (section 522) and is central to the public bankruptcy scheme, as it relates to both the exercise of exclusive jurisdiction over the property of the estate (because before property can become exempt, it is property of the estate)[7] and the equitable distribution of that property among a debtor's creditors. *See Katz*, 546 U.S. at 363–64 (noting that a discharge is among the "[c]ritical features" of a bankruptcy proceeding). As such, this determination is not only inextricably tied to the bankruptcy scheme, but it also involves the adjudication of rights created by the Bankruptcy Code. For these reasons, this matter falls within this Court's authority, and therefore this Court may enter a final order on the Trustee's Reply.[8]

---

[7] For a more detailed discussion of how and when property of the estate becomes exempt property, see *Calvin v. Wells Fargo Bank, N.A.* (*In re Calvin*), 329 B.R. 589, 597 (Bankr. S.D. Tex. 2005).

[8] The Trustee's Reply contains the actual objection to the Debtor's attempt to exempt the Insurance Proceeds under the homestead laws of the state of Texas. Accordingly, although this opinion refers to the Chapter 7 Trustee's objection to the Debtor's claim of exemptions, the actual pleading filed by the Trustee is styled as the Reply.

**B.     The Debtor's Amended Exemption of the Entire $73,000.00 Will Be Allowed.**

Based upon representations, testimony, and arguments made at the February 9, 2012 hearing, the Trustee made a two-fold closing argument in objecting to the Debtor's exemption.[9] First, this Court will address whether the Debtor's amended exemption of the net amount from the settlement—$73,000.00—should be entirely allowed under Texas Property Code §§ 41.001-.002, considering the numerous, unallocated causes of action which are not exempt under Texas state law.[10] Second, even if the Insurance Proceeds are completely exempt under the homestead exemption, this Court will address whether the Debtor has failed to maintain the exemption because he has not reinvested the Insurance Proceeds within six months of receipt.

The Court addresses both of these issues with one eye constantly cocked on two guiding principles.  First, amendments to exemptions are generally and liberally allowed under Bankruptcy Rule 1009.  Fed. R. Bankr. P. 1009(a) ("A voluntary petition, list, schedule, or statement may be amended by the debtor *as a matter of course at any time before the case is closed*.") (emphasis added).  Second, the Fifth Circuit has a long history of giving the benefit of doubt to the debtor with respect to exemptions.  *See State Farm Life Ins. Co. v. Swift* (*In re Swift*), 129 F.3d 792, 801 (5th Cir. 1997) ("Texas courts construe the scope of exemptions liberally, with most doubts about the existence of an exemption resolved in favor of the debtor claiming the exemption.").  Admittedly, the matter at bar is not a typical homestead exemption dispute, but rather a dispute over whether the Debtor may exempt all proceeds from the

_____

[9] *See* [Finding of Fact Nos. 12 & 15 ].

[10] The threshold requirement concerning exemptions, imposed by 11 U.S.C. § 522(l), is a timely objection by a party in interest.  Fed. Bankr. R. 4003(b) sets forth a thirty-day deadline to file objections.  If a party in interest files a timely objection, then the bankruptcy court decides if the claimed exemption fits into one of the categories listed in 11 U.S.C. § 522.  *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 650-51 (U.S. 1992) (acknowledging that had the trustee filed a timely objection, there was no statutory basis permitting an exemption of the debtor's proceeds from a lawsuit because tort recovery or any other payback claims are not represented in 11 U.S.C. § 522).

10

settlement of a lawsuit where the Debtor sought relief on several separate and distinct grounds, none of which can be exempt property.  Nevertheless, because the dispute could not have arisen but for the existence of the Debtor's homestead, this Court believes that it should take into account the Fifth Circuit's lengthy history of favoring homestead exemptions in concluding that the Debtor will be allowed to exempt the entire $73,000.00 under Texas Property Code §§ 41.001-.002.

       1. Texas Law Regarding Homestead Exemption Allows the Debtor to Exempt All of the Proceeds from the Settlement of the Lawsuit.

A "basic" rule of bankruptcy law is that "state law governs the substance of claims." *In re McCombs*, 2011 WL 4553052, at *2 (5th Cir. Oct. 4, 2011).  Congress "generally left the determination of property rights in the assets of a bankrupt's estate to state law.  Unless some federal interest requires a different result, there is no reason why [property] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id.*  In this case, the Debtor has claimed the settlement proceeds from the State Court Lawsuit (i.e. the Insurance Proceeds) as exempt under the Texas laws governing the homestead exemption.  [Findings of Fact Nos. 3 & 11]; *see* Tex. Prop. Code Ann. § 41.001 (West 2011).

To prevent a "debtor from becoming destitute, the Texas legislature enacted a scheme of exemptions that limits the ability of creditors to reach certain essential assets of the debtor.  The decision to exempt property is an important one, recognizing that the exempt property is vital to the debtor's continued existence." *Swift*, 129 F.3d at 801.  Generally, Texas courts liberally construe the scope of exemptions, "with most doubts about the existence of an exemption resolved in favor of the debtor claiming the exemption." *Id.*; *see also In re Norris*, 413 F.3d 526, 528 (5th Cir. 2005).  In doing so, courts look beyond the plain language of the statutes to examine the exemption's purpose and intent. *Stephenson v. Wixom*, 727 S.W.2d 747 (Tex.

App.—Fort Worth, 1987).   In numerous cases, they have extended specific exemptions to include the proceeds from the disposition of exempt property, including proceeds from an insurance policy or lawsuit.  *In re Swift*, 129 F.3d 792, 801 (finding that "proceeds, insurance, cause of action, etc., are a substitute for the exempt property that is lost.  To be effective, the substitute must be treated as if it were the lost item.  Otherwise, the protection provided by the exemption would be meaningless, and creditors could attack the unfortunate debtor").

The homestead exemption is defined by Texas Constitution Article 16, § 50, which provides that

> "[t]he homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for [certain exceptions not relevant here] . . . .  No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for [certain exceptions not relevant here]. . ."

As explained by the United States Supreme Court, "Texas establishes the family home or place of business as an enclave exempted from the reach of most creditors."  *U.S. v. Rodgers*, 461 U.S. 677, 684 (1983).  *Id.*  In the seminal case of *Swayne v. Chase*, 88 Tex. 218, 225 (Tex. 1895), the plaintiffs' home was destroyed by fire, and the Texas Supreme Court ruled that the proceeds of an insurance policy take the place of the property loss, and that the Texas courts may not limit the value of such funds under the homestead exemption.  *Id.* at 225-27 (stating that "the courts of this state have no power to say that only a reasonable portion of such a fund shall be exempt.  It is all exempt when derived from a policy on the homestead improvements."); *Price v. Price*, 394 S.W.2d 855, 858 (Tex. Civ. App. 1965) (holding that "[w]hen the house . . . is destroyed by fire and there exists thereon a policy by insurance, the money arising therefrom stands in the place instead of such house . . . The proceeds of the policy, therefore, take the place of the property loss").  Moreover, in *In re Barbe*, No. 05-21054, 2006 Bankr. LEXIS 513, at *3 (Bankr. E.D. La.

Feb. 17, 2006), the Bankruptcy Court of the Eastern District of Louisiana extended the Louisiana homestead exemption to cover proceeds from an insurance claim for damages caused by Hurricane Katrina.[11]

In the case at bar, the Debtor relies upon Texas homestead exemption law to claim as exempt the settlement proceeds from the State Court Lawsuit (i.e. the Insurance Proceeds). [Finding of Fact Nos. 9 & 13]. The proceeds at issue stem from the pre-petition settlement of the State Court Lawsuit against TWIA for its alleged failure to pay funds to repair damages to the Debtor's homestead caused by Hurricane Ike. [Finding of Fact No. 18]. Under Fifth Circuit precedent, both proceeds from a lawsuit filed to recover damages on a homestead or from an insurance policy settlement become part of the bankruptcy estate and are potentially exemptible. *Swift*, 129 F.3d at 801. Accordingly, the proceeds from the settlement of the State Court Lawsuit, no matter what their characterization, are eligible to be exempted from the estate. Similar to *Swayne* and *Barbe*, the proceeds here emanate from an event (i.e. a hurricane) that caused the property loss (i.e. the damages which the hurricane caused to the homestead). [Finding of Fact No. 16]. Because *Swayne* held that the proceeds of an insurance policy take the place of the property loss, the settlement proceeds paid by TWIA therefore take the place of the property loss associated with the Debtor's homestead.[12] Moreover, because a court may not limit the value of such proceeds under the homestead exemption, the Debtor may exempt the entire settlement amount of $73,000.00.

---

[11] Louisiana law, similar to Texas law, construes the homestead exemption liberally. *In re Barbe*, 2006 Bankr. LEXIS 513 at *3.

[12] In the case at bar, the proceeds do not solely come from the insurance policy that the Debtor has with TWIA. Rather, the proceeds come from the settlement of a lawsuit that the Debtor filed against TWIA in which he alleged that this carrier breached the insurance contract, among other claims. Although the facts in the case at bar differ in this respect from those in *Swayne*, this Court nevertheless concludes that this distinction should not bar the Debtor from exempting all the proceeds paid by TWIA. The Court arrives at this conclusion due to the liberal construction of the homestead laws of the state of Texas and the Fifth Circuit's holding in *Swift*.

Nor does the fact that the State Court Lawsuit pleaded several causes of action change this conclusion. Texas case law discusses apportionment of settlement proceeds, holding that debtors do not have the initial burden of breaking down these awards into exempt proceeds and nonexempt proceeds for other state law claims. *See, e.g.*, *In re Harrington*, 306 B.R. 172, 183 (Bankr. E.D. Tex. 2003) (holding that the Trustee objector "cannot escape the burden of proof assigned to an objecting party under Rule 4003(c) because the exemption claim relates to a settlement agreement which fails to allocate damages into specific categories of recovery."). In *In re Harrington*, the Chapter 7 trustee objected to the debtors' exemption of a $235,000 lump sum settlement agreement that failed to allocate damages into specific categories of recovery. *Id.* at 175. The court held that pursuant to Fed. Bank. R. 4003(c), the trustee could not shift the burden of proof to the debtors to prove the validity of the exemption because the ultimate burden lies with the party objecting to the exemption. *Id.* at 181. A debtor's assertion of the exemption claim is generally sufficient. *Id.* at 181-82. In *Harrington*, the trustee did not satisfy his burden "merely by pointing to the [d]ebtor's failure to allocate the settlement into its component parts." *Id.* at 182. The court refused to speculate on contested exemptions. *Id.* at 182. In light of broadly construed exemption law that favors debtors and the trustee's lack of specific proof that the claim was not exempt, the debtors would prevail on the lump sum settlement exemption. *Id.* at 182-83. *See also In re Patterson*, 128 B.R. 737, 740 (Bankr. W.D. Tex. 1991) (stating "all that the [d]ebtor must do to support a prima facie case is to claim the property as exempt.").

In the case at bar, the Debtor claims a valid exemption under Tex. Prop. Code § 41.001-.002. The Trustee has not met his burden by merely asserting that the Insurance Proceeds are not allocated among the various claims. [Trustee's Reply, Doc. No. 66, ¶ 8]. The Trustee needed to meet his burden of proof on this issue by adducing testimony, introducing exhibits, or both.

14

This, he failed to do. Therefore, the exemption claimed by the Debtor stands. For these reasons, the Court concludes that the Debtor may exempt all of the Insurance Proceeds.

> 2. The Homestead Exemption of the Insurance Proceeds is Not Terminated Due to the Debtor's Non-Use of the Proceeds for Six Months.

Even if the Insurance Proceeds qualify as exempt under Texas homestead law, the Trustee argues that the Debtor's exemption is terminated pursuant to Texas Property Code §§ 41.001-.002 because the Debtor did not reinvest the Insurance Proceeds to make repairs to his homestead within six months of receipt—i.e. as of January 11, 2012. [Doc. No. 66, ¶ 13]. Accordingly, this Court will address whether the Debtor's amended exemption of the $73,000 is waived under the six-month provision under Texas Property Code §§ 41.001-.002.

The Court concludes that the Trustee's argument fails. The six-month provision of the homestead exemption applies only when the homestead is sold.[13] Here, the Debtor did not sell his homestead. Thus, the six-month provision does not apply in the case at bar and the Insurance Proceeds have not lost their exempt status. *See England v. Federal Deposit Ins. Corp.* (*Matter of England*), 975 F.2d 1168, 1174 (5th Cir. 1992) (finding that "the plain language of section 41.001(c) clearly and unambiguously exempts only the proceeds of the *sale of homestead*", sheltering the proceeds for six months) (emphasis added).

### V. CONCLUSION

Because the Debtor's causes of action against TWIA originated from a suit over insurance regarding the Debtor's homestead, the proceeds generated from the settlement of the suit are exempt property. Given the circumstances in this case and the liberal construction of the

---

[13] The six-month provision provides that: "The homestead claimant's proceeds of a *sale of a homestead* are not subject to seizure for a creditor's claim for six months after the date of sale." Tex. Prop. Code Ann. § 41.001(c) (emphasis added).

Texas' homestead laws, the Debtor is entitled to exempt all of the Insurance Proceeds under Texas Property Code §§ 41.001-.002.

Nor does the fact that the Debtor has been holding the proceeds for over six months change the status of these proceeds into non-exempt property. As the statute unambiguously requires use of proceeds within six months only when the proceeds come from a **sale** of a homestead, the Debtor's receipt of the Insurance Proceeds does not trigger the six-month provision under Texas Property Code §§ 41.001-.002; no sale has ever occurred.

For all of the reasons set forth herein, the Court overrules the Trustee's objection to Debtor's claim of exemption in its entirety. An Order consistent with this Memorandum Opinion is being entered simultaneously on the docket.

Signed on this 9th day of March, 2012.

Jeff Bohm
United States Bankruptcy Judge